IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re:

JAMES STACEY CONLEY AND                    CASE NO. 23-10689-JCO
ANGELA MARIE CONLEY,                       CHAPTER 13

Debtors.

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on the Debtors' Objection to the Amended Proof of Claim (ECF 7-2) filed by Pen Air Credit Union ("Pen Air") and the Response thereto.(Docs. 110, 131). Proper notice of hearing was given and appearances were noted on the record. Upon consideration of the pleadings, record, and arguments of counsel, this Court finds that the Debtors' Objection to Pen Air's Claim is due to be OVERRULED for the reasons below.

## JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§1334 and 157, and the Order of Reference by the District Court dated August 25, 2015. This is a core proceeding under 28 U.S.C.§157(b)(2)(B) and (K).

## FINDINGS OF FACT

The Debtors, James Stacey Conley and Angela Marie Conley, filed this Chapter 13 bankruptcy on March 28, 2023. (Doc. 1). Their schedules reflect that they owned real property at

1

12156 Squirrel Drive, Spanish Fort, Alabama[1] ("Property") which they valued at $304,900.00.(*Id.* at 27). Their schedules also list the following liens on the Property: a $201,477.00 mortgage to Nationstar Mortgage, LLC, a $1,022.00 debt to Midland Funding, a $21,414.00 State of Alabama tax lien; a $2,112.00 Homeowner's Association obligation; and a $100.00 debt to Velocity Investments. (*Id.* at 35-37). The Debtors also claimed their homestead exemption of $32,900.00, leaving approximately $45,875.00 of non-exempt equity in the Property as of the Petition Date.[2] The ECF Claims Registry reflects that the liens of Midland, the State of Alabama, and Velocity were all recorded in the Office of Judge of Probate of Baldwin County, Alabama in 2021. (See ECF Claims, 3-2, 14-1, and 15-1).

The deadline for filing proof of claims was June 6, 2023. Pen Air Credit Union ("Pen Air") timely filed a proof of claim for $7,087.09 on April 14, 2023 ("Initial Claim"). (ECF Claim 7-1). One part of the Initial Claim denotes it as unsecured, while another states that it is based on a judgment against Angela Conley. *Id.* Pen Air attached a copy of the Certificate of Judgment reflecting that it was recorded in the Office of the Judge of Probate of Baldwin County, Alabama on March 9, 2018. (*Id.*). The Initial Claim was prepared and filed by a bankruptcy specialist employed by Pen Air, without the benefit of counsel.

The Debtors' case was confirmed on July 6, 2023, with all allowed nonpriority, unsecured claims to be paid 100% pro rata. (Doc. 34). The Confirmed Plan also contained a non-standard plan provision stating that ". . .[t]he debt to Pen Air Federal Credit Union will be paid as unsecured claim instead of secured in accordance with Proof of Claim #7 filed by Creditor and any claimed lien shall be extinguished. (*Id.* at 4). On August 22, 2024, approximately 16 months into the 60-month plan, Pen Air amended the Initial Claim to reflect its debt as secured and increased the

---

[1] The Court notes that the Property is within the confines of Baldwin County, Alabama.
[2] This is exclusive of Pen Air's Judgment lien, which the Debtors did not list on their Schedule D.

2

amount to $17,246.64 ("Amended Claim").(ECF Claim 7-2). The increased amount included $8193.94 in interest on the judgment and attorney's fees of $2328.50. (*Id.*). The record reflects that the Amended Claim was filed by counsel. (*Id.*)

On May 29, 2024, the Debtors filed their First Motion to Sell the Property (Not Free and Clear of Liens) for $395,000.00. (Doc.57). The Court approved the $395,000.00 sale and entered an order providing in part that, "[f]rom the sale proceeds, the closing agent is authorized to *pay all outstanding mortgages and liens*, usual and reasonable closing costs, and real estate broker's fees . . . ." (Doc. 73). The $395,000.00 sale was not consummated and a Second Motion to Sell (Not Free and Clear of Liens) for $392,000.00 was filed on August 19, 2024. (Doc.83). Pen Air objected to the $392,000.00 proposed sale, seeking payment of its judgment lien in full. (Doc. 93). Pen Air's objection was not adjudicated because the $392,000.00 proposed sale fell through and the Second Motion to Sell was denied.(Doc. 98). The Debtors filed an Objection to Pen Air's Amended Claim on September 24, 2024, and their Third Motion to Sell the Property (Not Free and Clear of Liens) for $380,000.00 on October 14, 2024. (Docs. 110, 115).

The Third Motion to Sell proposed to pay a 5% brokerage fee, the outstanding mortgage debt, and various liens from the proceeds of the sale but did not reference the judgment debt owed to Pen Air. (Doc. 115). Pen Air Objected to the Debtors' Third Motion to Sell, again seeking payment of their judgment lien from the closing proceeds. (Doc. 124). Pen Air also filed a Response to the Debtors' Objection to its Amended Claim.(Doc.131). This Court approved the Third Motion to Sell (to avoid the loss of the Buyer), and entered an Order providing in part that:

> From the sale proceeds, the closing agent is authorized to pay all outstanding mortgages and liens, usual and reasonable closing costs, and real estate broker's fees on the terms previously approved, if applicable. The net proceeds attributable to the interest of debtor(s) shall be disbursed as follows: $550.00 to Stephen L. Klimjack and the remainder to be paid to the Chapter 13 Trustee, P. O. Box 1779,

3

> Memphis, TN 38101 for application to the chapter 13 plan, with the percentage to unsecured creditors to be paid 100%.

(Doc. 136).

The sale of the Property closed and the statements of the parties at the hearing together with the Record reflect that: (1) the closing agent, Anchor Title, LLC, remitted $108,449.61 to the Chapter 13 Trustee; (2) the Trustee has disbursed the proceeds received from the closing; and (3) Anchor Title LLC is holding approximately $21,927.04, denoted on the closing statement as a payoff of Pen Air's Judgment, but has not remitted the funds pending a ruling from this Court on the Debtors' Objection to Claim. (Docs.158, 162-1, March 26 Hr'g 11:17). As of April 11, 2025, the Chapter 13 Trustee's records reflect that no payments have been made on Pen Air's Initial or Amended Claims, all the other claims have been paid in full at 100%, and the Trustee still has a balance of approximately $9,122.49 on hand.

## ANALYSIS

The Conleys assert that the Amended Claim should not be allowed because it is essentially a new claim, Pen Air waived its right to receive post-petition interest, and equitable factors weigh in favor of the Debtors.

### *ECF Claim 7-2 Should Be Treated As An Amended Claim, Not An Entirely New Claim*

Amendments to proofs of claim are freely allowed to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim. *In re Int'l Horizons, Inc.,* 751 F.2d 1213, 1216 (11th Cir. 1985); *In re Telephone Company of Central Florida,* 308 B.R. 579, 582 (Bankr.M.D.Fla.2004); *In*

4

Case 23-10689    Doc 169    Filed 07/07/25    Entered 07/07/25 14:55:41    Desc Main
Document      Page 4 of 14

re Norris Grain Co., 131 B.R. 747, 749–750 (M.D.Fla.1990), aff'd, 969 F.2d 1047 (11th Cir.1992); *In re Gilley*, 288 B.R. 901, 905 (Bankr.M.D.Fla.2002). In determining whether an amended claim should be allowed courts often employ a two-prong test which: (1) evaluates whether the amendment is a true amendment or a new claim disguised as an amendment; and (2) applies a five-factor equitable balancing test. *United States v. Int'l Horizons, Inc.,* 751 F.2d 1213, 1218 (11th Cir.1985); *In re Jones*, 219 B.R. 631, 634 (Bankr. M.D. Fla. 1998); *In re National Merchandise*, 206 B.R. 993 (Bankr. M.D. Fla 1997); *In re Miss Glamour Coat Co., Inc.,* 46 A.F.T.R.2d 80-6083, USTC § 9737 (S.D.N.Y.1980). The equitable factors considered are: (1) whether the debtor and creditors relied on the earlier proof of claim or had reason to know that a subsequent proof of claim would be filed; (2) whether other creditors would receive a windfall if the court refused to allow amendment; (3) whether the claimant intentionally or negligently delayed in filing the amendment; (4) the justification for the failure to file for an extension to the bar date; and (5) whether other equitable considerations exist which compel amendment. *Id.*

Although some courts have held that amending a claim from unsecured to secured constitutes a new claim, reasoning that the two are fundamentally different, this Court finds that an equitable analysis based on the totality of the circumstances is the most appropriate approach. See, e.g., *In re Alliance Operating Corp.,* 60 F.3d 1174, 1175 (5th Cir.1995); *In re Walls & All, Inc.,* 127 B.R. 115, 118 (W.D.Pa.1991); *In re Nat'l Merch. Co.,* 206 B.R. 993, 999 (Bankr.M.D.Fla.1997). *In re Int'l Horizons, Inc.,* 751 F.2d 1213 (11th Cir.1985); *In re Marineland Ocean Resorts, Inc.*, 242 B.R. 748 (Bankr.M.D.Fla.1999); *In re Durango Georgia Paper Co.*, 314 B.R. 885, 888 (Bankr. S.D. Ga. 2004); *In re Miss Glamour Coat Co.,* 80–2 U.S.T.C. ¶ 9737, 1980 WL 1668 (S.D.N.Y.1980).

Pen Air's Initial Claim was timely filed, indicates that it is based on a judgment, and includes the Certificate of Judgment which was duly recorded pre-petition.[3] The basis for the Amended Claim is the same Judgment. As the Debtors had substantial non-exempt equity in Property before filing bankruptcy, Pen Air's Judgment Lien attached pre-petition under applicable state law.[4] Thus, the Initial Claim contained conflicting information because it referenced and attached the judgment evidencing secured status, while also checking the unsecured box. Considering the inconsistencies in the Initial Claim and the fact it was prepared and filed without the benefit of counsel, this Court finds that: (1) the checking of the unsecured box on the Initial Claim should be construed as a clerical error; (2) the defect with conflicting information in the Initial Claim is attributable to ignorance or mistake of the non-attorney preparer, rather than an intentional relinquishment of a known right; (3) the Amended Claim is based on the same judgment that was attached to the Initial Claim; and (4) the Amended Claim is more akin to an amendment of the Initial Claim rather than a new claim.

The decisions cited by the Debtors are notably distinguishable from the facts of this case. See *In re Norris Grain Co.*, 81 B.R. 103 (Bankr. M.D. Fla. 1987), aff'd, 131 B.R. 747 (M.D. Fla. 1990), aff'd sub nom. *Norris Grain Co. v. United States*, 969 F.2d 1047 (11th Cir. 1992) (holding amended claim for $1,690,026.00 in income taxes was substantially different than $365.75 claim for interest on late payment of income taxes as they arose out of separate statutory provisions of the Internal Revenue Code); *In re Taylor*, 280 B.R. 711, 715 (Bankr. S.D. Ala. 2001)(explaining that allowing amendment four years after confirmation would be prejudicial); *In re Barrera*, No. 8:10-BK-26730-RCT, 2016 WL 6990876, at 2-3)(Bankr. M.D. Fla. Nov.29, 2016)(avoiding lien

---

[3] Pen Air subsequently filed additional exhibits further supporting its claim including a copy of the underlying agreement reflecting a default interest rate of 18%. (Doc. 163). Counsel stipulated to the admissibility thereof.
[4] See Ala. Code §6-9-211.

after claim was paid as an unsecured for nearly five years and the debtors had made their final plan payment).

Additionally, the record does not support the Debtors' argument that Pen Air waived the right to amend its claim. Although a creditor may waive its secured status in certain instances, waiver requires the intentional relinquishment of a known right. *Matter of Garfinkle*, 672 F.2d 1340, 1347 (11th Cir. 1982)(citing *Fireman's Fund Ins. Co. v. Vogel*, 195 So.2d 20 (Fla.App.1967); *Gilman v. Butzloff*, 155 Fla. 888, 22 So.2d 263 (1945); *Rader v. Prather,* 100 Fla. 591, 130 So. 15 (1930). Waiver requires: (1) the existence at the time of the waiver a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage, or benefit. *Id.* Waiver does not arise from mere forbearance for a reasonable time. *Fireman's Fund* at 24. Thus, the errors and omissions in Pen Air's Initial Claim, filed without the benefit of counsel, does not evidence an intent to relinquish the ability to amend its claim, abandon its secured status, or otherwise waive its rights as a judgment lienholder.

*Additional Equitable Considerations Support Allowance of the Amended Claim.*

Consideration of the five *Miss Glamour Coat* Factors employed by the Eleventh Circuit in United *States v. Int'l Horizons, Inc.,* also weigh in favor of allowing ECF Claim 7-2 as an Amended Claim. First, as the Initial Claim contained inconsistent information and counsel was not involved in its preparation or filing, it was reasonably foreseeable that Pen Air would seek to correct its claim and assert its lienholder interest. This is especially true here since the Debtors sold Property for an amount that was substantially higher than disclosed in their schedules and more than

7

sufficient to pay all the creditors' claims in full. The Debtors' assertion that Pen Air's unsecured treatment in the Debtors' prior Chapter 13 Bankruptcy[5] precludes secured treatment in this case is not persuasive because: (1) there was no actual adjudication or avoidance of Pen Air's lien in the prior case; (2) property values can appreciate with the passage of time affecting a creditor's secured status; and (3) it is not equitable for the Debtors to seek res judicata effect from a prior case that was dismissed less than a year into a proposed sixty-month plan due to their failure to make payments.

Secondly, disallowance of the Amended Claim would result in the disparate treatment of judgment lien creditors in contravention of the bankruptcy tenet requiring debtors to treat similarly situated creditors the same and not unfairly discriminate. See *11 U.S.C. §1322(b)((1)*. There is no dispute that Pen Air had a validly perfected pre-petition judgment. Yet other judgment creditors, whose liens were subordinate to Pen Air, received 100% payment of their claims while Pen Air has not received any payments from the Trustee.[6] Thus, the other creditors would not be prejudiced by allowance of the Amended Claim. As the Closing Statement reflects that Anchor Title is holding sufficient funds to satisfy Pen Air's Judgment, allowance of the Amended Claim, in whole or in part, would not require disgorgement of previously disbursed funds, impose any hardship upon other creditors, or cause any administrative issues for the Trustee. It would also not detrimentally impact the completion of the bankruptcy or require the Debtors to make any further payments into the case to receive a discharge. Conversely, disallowance of the Amended Claim, would result in disparate treatment of judgment lien creditors in violation of the Bankruptcy Code and bestow a windfall upon the Debtors, who would receive the surplus created thereby.

---

[5] Bankr. S.D. Ala. 22-11645.
[6] The Court takes judicial notice of the Chapter 13 Trustee's case overview ledger pursuant to Federal Rule of Evidence 201. The Trustee's recorded reflect that all the claims in the case, except for Pen Air's, have been paid in full and that Pen Air has not received any payments from the Trustee.

Third, as the Debtors acknowledged, there is no evidence of bad faith or dilatory tactics by Pen Air. (Doc.157 at 4). Even though the Initial Claim was not amended until August 22, 2024, approximately 44 months remained for the Debtors to payout the case at that time had they chosen to do so. The Record reflects that once counsel was obtained, the Initial Claim was promptly amended.[7] Additionally, Pen Air filed an Objection to the Debtors' Second Motion to Sell. Thus, even though the Debtors did not pursue the Second Motion, they were aware of Pen Air's Judgment since the filing of the Initial Claim and its intent to seek satisfaction if its lien from the closing proceeds prior to filing their Third Motion. The Court does not find the fourth factor relevant because as discussed above, the Initial Claim was timely filed.

### *Pen Air Is Entitled to Satisfaction of Its Judgment Lien*

Alabama law provides that the holder of a judgment has a lien upon property of the debtor, which is subject to execution, upon recording the judgment, or a certificate of the judgment, with the Judge of Probate. *In re Holloway*, 254 B.R. 289, 291 (Bankr. M.D. Ala. 2000), aff'd, 261 B.R. 490 (M.D. Ala. 2001)(citing *Ala.Code § 6–9–211*; *Citibanc of Alabama/Tuskegee v. Potter*, 379 So.2d 553, 555 (Ala.1979). It is well established that a discharge in bankruptcy does not extinguish a lien on property which had attached as of the date of the petition. *In re Barnes*, 326 B.R. 832, 841–42 (Bankr. M.D. Ala. 2005)(citing *Long v. Bullard,* 117 U.S. 617, 620–21, 6 S.Ct. 917, 918, 29 L.Ed. 1004 (1886); *In re Thomas*, 883 F.2d 991, 996–97 (11th Cir.1989; *In re Holloway*, 254 B.R. 289, 292 (Bankr.M.D.Ala.2000), *In re Penrod*, 50 F.3d 459, 461–62 (7th Cir.1995); *In re Tarnow*, 749 F.2d 464, 465 (7th Cir.1984). A bankruptcy discharge extinguishes only in personam

---

[7] The ECF docket reflects that the Initial Claim was amended by counsel the same day that Pen Air's counsel appeared by filing its Objection to the Debtors' Motion to Sell on August 22, 2024.

claims against the debtor(s), but generally has no effect on an in rem claim against the debtor's property. *In re Holloway* at 292 (citing *Dewsnup v. Timm*, 502 U.S. 410, 419, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992)). Additionally, Courts have held that confirmation of Chapter 13 plans, without more, does not divest the holder of a lien of its rights in collateral. *Id.* (citing *In re Deutchman*, 192 F.3d 457 (4th Cir.1999); *In re Hanson*, 58 F.3d 89 (4th Cir.1995). The Bankruptcy Code provides a mechanism for avoiding a judgment lien to the extent it impairs an exemption to which the Debtor would have been entitled. 11 U.S.C. §522(f). The Local Bankruptcy Rules of this jurisdiction also provide that:

> A motion to avoid a judicial lien under Bankruptcy Code § 522(f) shall:
> (a) Clearly identify the party that holds the lien sought to be avoided in both the title and the body of the motion;
> (b) Describe when and where the lien is recorded in the official records, i.e., book and page or instrument numbers; and
> (c) Have attached a copy of the lien sought to be avoided.

*LBR 4003-1*.

Although the Debtors argue that the language included in their plan, proposing to avoid Pen Air's lien, is determinative, this Court disagrees. The Debtors did not file a motion to avoid Pen Air's Judgment lien but instead included a statement in a non-standard provision of their Chapter 13 plan. Such statement did not comply with LBR 4003-1. There was no evidentiary hearing or substantive adjudication on the issue of whether Pen Air's Judgment lien was due to be avoided. To be clear, this Court holds that any attempt to avoid a lien through the use of a non-standard provision in a Chapter 13 Plan is ineffective.

Further, if the judgment lien could have been avoided, such avoidance would not be effective until completion of the bankruptcy case. As noted above, it is a fundamental principle of bankruptcy that a lien, as an in rem interest in property, " passes through bankruptcy unaffected unless something happens to it during the case." *In re Andrews*, 500 B.R. 214, 220 (Bankr. N.D.

10

Ga. 2013). In instances in which liens are avoided during the Chapter 13 proceeding, it is plan completion that voids the lien. *In re Jennings*, 454 B.R. 252, 255 (Bankr. N.D. Ga. 2011.) Here, the Debtors sold the Property *before* completion of the case for more than enough to pay off the outstanding liens, (including Pen Air's Judgment) as well as 100% of the unsecured claims. For all these reasons, the Court finds that Pen Air's Judgment lien must be satisfied from the closing proceeds.

Amount Necessary to Satisfy Pen Air's Judgment Lien

As this Court has determined that the Debtors' Objection to Pen Air's Amended Claim is due to be overruled and satisfaction of the underlying Judgment is required, it will also address the amount necessary to satisfy the Judgment lien. When a proof of claim contains all the information required under Rule 3001, it "constitute[s] prima facie evidence of the validity and amount of the claim." *In re Walston*, 606 F. App'x 543, 546 (11th Cir. 2015)(citing *Fed. R. Bankr.P. 3001(f)*. To comply with Rule 3001 and be entitled to prima facie evidentiary status, therefore, a claim based on a writing must attach one of two things: (1) the writing forming the basis for the claim or a duplicate or (2) a sufficient explanation or summary. See *In re Tran*, 369 B.R. 312, 316 (S.D.Tex.2007). It is also recognized that the 'basic federal rule' in bankruptcy is that state law governs the substance of claims." *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) (quoting *Butner v. U.S*., 440 U.S. 48, 57, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). Thus, "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions in the Bankruptcy Code." *Id.* (citing *Butner*, 440 U.S. at 55, 99 S.Ct. 914; *Vanston*

*Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161–62, 67 S.Ct. 237, 91 L.Ed. 162 (1946)).The Alabama Code provides in pertinent part that,

> Judgments for the payment of money, other than costs, if based upon a contract action, bear interest from the day of the cause of action, at the same rate of interest as stated in the contract; all other judgments shall bear interest at the rate of 7.5 percent per annum, the provisions of Section 8-8-1 to the contrary notwithstanding; provided, that fees allowed a trustee, executor, administrator, or attorney and taxed as a part of the cost of the proceeding shall bear interest at a like rate from the day of entry.

*Ala. Code. §8-8-10*.

The evidence established that Pen Air obtained and perfected a pre-petition judgment against Debtor, Angela Conley, which attached to the Property. Yet as the Debtors' Objection disputes the inclusion of interest and attorney's fees sought in the Amended Claim, such issue merits consideration.

It is well-settled that claims based on credit card debts are based on writings. See, e.g., *In re Armstrong*, 320 B.R. 97 (Bankr.N.D.Tex.2005); *In re O'Brien*, 440 B.R. at 661 ("[C]ourts agree that a credit card agreement is based upon a writing and therefore, to comply with Rule 3001(c), the claimant also must file the 'writing' on which the claim is 'based.' "). Pen Air provided a copy of the "Loan Liner Credit Card Application" as well as a copy of its Certificate of Judgment. (ECF Claim 7-1, Doc. 131 at 8). The documentation supports Pen Air's assessment of 18% post-judgment interest because: (1) the Loanliner credit agreement disclosure provides for an 18% penalty APR upon failure to make timely payments; and (2) the undisputed evidence reflects that the Debtors defaulted on the loan payments resulting in entry of the Judgment. Hence, under Alabama Code §8-8-10, the "rate of interest as stated in the contract" is 18%. Further, Pen Air's documents provide in part that, the debtor agreed to " pay all costs of collecting the amount due under [the] Agreement, including court costs and reasonable attorneys' fees." (Doc. 163 at 5). As

12

Pen Air's original claim includes $1,153.50 in attorney's fees awarded by the State Court through the date of the Judgment, and the Creditor's claim seeks another $2,328.50, the Court must adjudicate the reasonableness of the additional fees requested. The record reflects that Pen Air initially filed its own proof of claim and thereafter retained counsel to amend its claim and respond to the Debtors' Motions to Sell and Objections to Claim. Pen Air's counsel necessarily also attended hearings, filed pleadings, and submitted briefing on the pending matters. The Court finds that such actions were necessary to protect Pen Air's interest and the attorney's fees claimed were allowed by the underlying contract and reasonable.

CONCLUSION

Based on the above, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. The Debtors' Objection to Pen Air's Proof of Claim (ECF Claim No 7-2) is OVERRULED.

2. Pen Air's Claim 7-2 is ALLOWED as secured in the amount of $17,246.64.

3. Anchor Title, LLC is directed to remit $21,885.10[8] (the funds held for payment of Pen Air's judgment lien), to the Chapter 13 Trustee immediately and no later than ten days from entry of this Order.

4. Such payment shall include the Debtors' *name and case number* in the reference, be made payable to the Chapter 13 Trustee, Christopher T. Conte, and mailed to the Chapter 13 Trustee at P.O. Box 1779 Memphis TN, 38101-1779.

5. Upon receipt and posting of the payment required under paragraph 3, the Chapter 13 Trustee shall pay Pen Air's Proof of Claim in accordance with the terms of this Order.

---

[8] If Anchor Title earned any interest on the amount held since the date of the closing, the amount remitted to the Chapter 13 Trustee shall be increased accordingly.

6. Such payment shall constitute full satisfaction of Pen Air's Judgment recorded in the Office of Probate of Baldwin County, Alabama, Instrument Number 1683777.

7. The Clerk of Court is directed to serve a copy of this Order on the Debtor, Debtor's Counsel, the Chapter 13 Trustee and Anchor Title LLC. Service upon Anchor Title, LLC shall be made by first class and certified mail addressed as follows: Anchor Title, LLC, Attn: Registered Agent, Joy Nash, 3173B, Dauphin Street, Mobile, AL 36606.

Dated: July 7, 2025

_____
JERRY OLDSHUE
CHIEF U.S. BANKRUPTCY JUDGE